**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1956-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE M. ROSARIO-ARIAS,

    Defendant-Appellant.

_____

Submitted May 5, 2026 – Decided July 22, 2026

Before Judges DeAlmeida and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 11-09-0107.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Jennifer Davenport, Attorney General, attorney for respondent (Debra G. Simms, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Jose M. Rosario-Arias appeals from the February 28, 2025 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

At a plea hearing, defendant admitted that on March 28, 2009, he drove his vehicle from the Bronx, New York to New Jersey, where he was stopped by police at a gas station. He signed a consent to search form allowing the officers to search his vehicle. The search uncovered six hundred bricks of heroin he intended to sell.

A Bergen County grand jury indicted defendant, charging him with: (1) second-degree conspiracy to possess a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and :5-2 (count one); (2) first-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) (count two); and (3) third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count three).

On April 2, 2012, pursuant to a plea agreement, defendant, then a permanent resident of the United States but not a citizen, pleaded guilty to count two of the indictment. An interpreter was provided at the plea hearing because

2

defendant was a Spanish speaker.  Before accepting defendant's guilty plea, the court engaged in the following exchange with him:

> THE COURT:  Have you had enough time to speak with your attorney?
>
> [DEFENDANT]:  Yes.
>
> THE COURT:  Are you satisfied with her services?
>
> [DEFENDANT]:  (Inaudible).[1]
>
> . . . .
>
> THE COURT:  All right.  Are you a United States citizen?
>
> [DEFENDANT]:  No.
>
> THE COURT:  You understand that if you are not a citizen of the United States, the guilty plea may result in your removal from the United States and/or stop you from being able to legally reenter the United States.  Do you understand that, sir?
>
> [DEFENDANT]:  Yes.
>
> THE COURT:  Do you understand that you have the right to seek individualized advice from an attorney about the effect your guilty plea will have on your immigration status?

---

[1]  Although defendant's answer was inaudible, in his PCR petition he did not allege he stated he was not satisfied with the attorney's services.  In addition, on the plea form, defendant responded "[y]es" to the question "[a]re you satisfied with the advice you have received from your lawyer?"

A-1956-24

THE INTERPRETER:  Your Honor, the defendant is answering in English.

[DEFENDANT]:  Yes.

THE COURT:  All right.  Have you discussed with an attorney the potential immigration consequences of your plea?

[DEFENDANT]:  Yes.

THE COURT:  Having . . . been advised of the possible immigration consequences of your plea and the right to seek individual[] legal advice on your immigration consequences, do you still wish to plead guilty?

[DEFENDANT]:  Yes.

After providing a factual basis for his guilty plea, defendant had the following exchange with his attorney:

[COUNSEL]:  And you did speak to an immigration attorney on my suggestion that you speak to someone regarding the immigration process of – of this case.

[DEFENDANT]:  Yes.

[COUNSEL]:  And he explained to you what (inaudible) a plea of guilty?

[DEFENDANT]:  Yes.

Defendant also acknowledged he was pleading guilty to a first-degree crime:

A-1956-24

THE COURT: You understand, you're pleading guilty to first[-]degree distribution? Is it distribution or possession of these items?

[COUNSEL]: Just possession, Judge.

THE COURT: All right. Possession with the intent to distribute, you could have received up to twenty years, one-third without parole. You understand that?

[DEFENDANT]: Yes.

In addition, the plea form signed by defendant indicated he was pleading guilty to a first-degree crime with a potential maximum sentence of twenty years. That form also contained the following questions: (1) "Are you a citizen of the United States?", to which defendant answered, "No[;]" (2) "Do you understand that if you are not a citizen of the United States, this guilty plea may result in your removal from the United States and/or stop you from being able to legally enter or re-enter the United States?", to which defendant answered, "Yes[;]" (3) "Do you understand that you have the right to seek individualized advice from an attorney about the effect your guilty plea will have on your immigration status?", to which defendant answered, "Yes[;]" (4) "Have you discussed with an attorney the potential immigration consequences of your plea?", to which defendant answered, "Yes[;]" and (5) "Having been advised of the possible immigration consequences and of your right to seek individualized

legal advice on your immigration consequences, do you still wish to plead guilty?", to which defendant answered, "Yes[.]" The supplemental plea form defendant signed also noted he was pleading guilty to a first-degree crime.

The State agreed to recommend the court sentence defendant to a ten-year term of imprisonment, with an eighteen-month period of parole ineligibility. The plea judge, however, stated he intended to sentence defendant to a five-year term of imprisonment, with an eighteen-month period of parole eligibility, a term at the low end of the second-degree sentencing range.

Defendant failed to appear for sentencing and remained a fugitive for approximately seven years. On August 2, 2019, a different judge sentenced defendant to a five-year term of imprisonment, with an eighteen-month period of parole ineligibility, pursuant to the representation made by the plea judge. At sentencing, the court stated defendant had pleaded guilty to a first-degree crime. The presentencing report also indicated defendant pleaded guilty to a first-degree crime. On the State's motion, the court dismissed the remaining counts of the indictment. The August 14, 2019 judgment of conviction (JOC) stated defendant was convicted of a first-degree crime.

Defendant appealed his sentence. The matter was heard on this court's sentencing calendar pursuant to Rule 2:9-11. At oral argument, defendant's

A-1956-24

counsel noted he had pleaded guilty to a first-degree crime, had been paroled, and was in the custody of Immigration and Customs Enforcement (ICE). Counsel did not argue defendant believed he had pleaded guilty to a second-degree crime. We affirmed. State v. Rosario-Arias, Docket No. A-0808-21 (App. Div. Mar. 10, 2022).

Defendant subsequently filed a petition for PCR. He alleged that prior to entry of his guilty plea, he consulted an immigration attorney who advised him and his plea counsel he could "limit or eliminate the potential deportation consequences of the plea" by pleading guilty to a second-degree crime. He claimed his plea counsel was ineffective because she: (1) advised him the plea forms "had been filled out to accomplish what [his] immigration attorney had said, and that the plea was to a second-degree offense, regardless of what was said in [c]ourt during the plea proceeding[;]" (2) did not discuss the pre-sentencing report's indication he had pleaded guilty to a first-degree crime and because he "could not read or write English at the time the plea was entered . . . had to rely on what my attorney said to me about what was written on the form[;]" and (3) did not discuss with him "using a 'sentenced as a second-degree, while pleading to a first-degree crime' as an alternative to pleading to a second-degree crime." Defendant contended, had he been aware the plea agreement

required him to plead guilty to a first-degree crime, he would not have accepted the agreement and gone to trial. He requested his conviction be vacated and a trial scheduled on the indictment.

On February 28, 2025, Judge Mitchell I. Steinhart, who had not presided at defendant's guilty plea or sentencing hearings, issued a comprehensive written decision denying the petition without an evidentiary hearing. Judge Steinhart, after recounting the questions and answers at the plea hearing and on the plea form detailed above, concluded:

> [D]efendant argues that he was misled about what he was pleading to. His actions, though, belie his arguments. His plea attorney advised . . . defendant to speak with an immigration attorney and . . . defendant did so. [D]efendant's representations in court were that he was fully informed of the consequences, that he acknowledged that he was pleading to a first-degree crime and that he was pleading "with knowledge, intelligently and voluntarily." [D]efendant testified . . . that he understood that by pleading guilty he could be removed from the United States, but that he still wished to plead guilty. The plea form reflects the same.

In addition, the judge noted defendant received a favorable sentence for a first-degree conviction. He found that

> [c]onsidering all the circumstances, what occurred was a successful trial strategy, as allowed by law. Prior counsel pled . . . defendant after she had recommended that . . . defendant speak with an immigration attorney. The attorney designed her best legal strategy around the

8

A-1956-24

aspects she could control to benefit . . . defendant. Recommending a person with immigration concerns consult with an immigration attorney, and then acting to get them the best deal, does not fall short of the "prevailing legal norms of the legal community" of an effective attorney.

Judge Steinhart also rejected defendant's claim a language barrier prevented him from receiving effective assistance of counsel. The judge found:

[D]efendant claims to have been confused with English at the time of his plea. However, he had an [Administrative Office of the Courts]-approved interpreter for all proceedings. [D]efendant did not question in court the mention of pleading to a first-degree crime, which was made quite clear during the plea.

The court must be able to rely upon a litigant's sworn testimony and not the excuse "I really didn't mean it," especially when there is clarity and consistency. Solemn declarations in open court carry a strong presumption of verity. State v. Simon, 161 N.J. 416, 444 (1999) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).[2]

Thus, the judge concluded defendant had not demonstrated by a preponderance of the evidence he was denied effective assistance of counsel. In addition, the judge found defendant did not establish another strategy by counsel

---

[2] The sentence beginning with "[s]olemn declarations . . ." and the citations that followed were added to the court's decision by a March 10, 2025 amplification letter. R. 2:5-1(d).

would have resulted in a more favorable outcome. The judge concluded "defendant just makes bald assertions which are contradicted by the plea form and defendant's sworn testimony."

A February 28, 2025 order dismissed defendant's PCR petition without an evidentiary hearing. This appeal followed.

Defendant raises the following argument for our consideration:

> DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING BECAUSE HE ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO ADVISE HIM THAT HIS GUILTY PLEA WAS TO A FIRST-DEGREE CRIME, RATHER THAN A SECOND-DEGREE CRIME, AND OF THE DEPORTATION CONSEQUENCES OF THAT CONVICTION.

## II.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). Under Rule 3:22-2(a), a defendant is entitled to post-conviction relief if there was a "'substantial denial in the conviction proceedings' of a defendant's state or federal constitutional rights." Ibid. "A petitioner must establish the right to such relief by a preponderance of the credible evidence." Ibid. (citing State v. Mitchell, 126 N.J. 565, 579 (1992)). "To sustain that burden, specific facts" that "provide

the court with an adequate basis on which to rest its decision" must be articulated. Mitchell, 126 N.J. at 579.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984); State v. Fritz, 105 N.J. 42, 58 (1987)). To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by Strickland, and adopted by our Supreme Court in Fritz. 466 U.S. at 687; 105 N.J. at 58.

Under Strickland, a defendant must first show his or her attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness." Id. at 688.

A defendant also must show that counsel's "deficient performance prejudiced the defense[,]" id. at 687, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" id. at 694. The right to the effective assistance of counsel extends to legal assistance related to the entry of a guilty plea. State v. Gaitan,

11

209 N.J. 339, 350-51 (2012). To establish the prejudice prong in the context of a guilty plea, a defendant must show "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). To that end, "a [defendant] must convince the court that a decision to reject the plea bargain" and "insist on going to trial" would have been "rational under the circumstances." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

Where a defendant's immigration status is at stake and the law is "succinct, clear, and explicit," counsel must affirmatively inform the defendant a conviction will result in removal from the country; where the law is not as clear, counsel must advise the defendant of the "risk of adverse immigration consequences." Padilla, 559 U.S. at 368-69; see also Gaitan, 209 N.J. at 356. An attorney need not use specific "magic words" to convey the applicable risk or likelihood of removal. State v. Blake, 444 N.J. Super. 285, 299-300 (App. Div. 2016). Where the immigration consequences of a guilty plea are not clear, "counsel must highlight for noncitizen clients that entering a guilty plea will

12

place them at risk of removal and that they may seek to obtain counseling on potential immigration consequences." Gaitan, 209 N.J. at 381.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697; State v. Marshall, 148 N.J. 89, 261 (1997). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

We review a judge's decision to not hold a PCR evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing Marshall, 148 N.J. at 157-58). Where a PCR court does not hold an evidentiary hearing, this court's standard of review is de novo as to both the factual inferences drawn by the trial court from the record and the court's legal conclusions. Blake, 444 N.J. Super. at 294; see State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020) (quoting State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014)).

A hearing is required only when: (1) a defendant establishes a prima facie case in support of PCR; (2) the court determines there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3)

the court determines an evidentiary hearing is required to resolve the claims asserted. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Id. at 355 (quoting R. 3:22-10(b)).

In deciding whether an evidentiary hearing is warranted, "the court should examine the transcripts of the plea colloquy and sentencing hearing . . . to determine if either transcript provides support for an after-the-fact assertion that counsel failed to provide advice affirmatively sought by a client as to the immigration consequences of entering into a specific guilty plea." Gaitan, 209 N.J. at 381. "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee v. United States, 582 U.S. 357, 369 (2017).

Having reviewed defendant's arguments in light of the record and applicable legal principles, we affirm the February 28, 2025 order substantially

for the reasons stated by Judge Steinhart in his thorough and well-reasoned written decision.  We add the following brief comments.

Defendant's claim he was unaware he was pleading guilty to a first-degree crime is squarely contradicted by the record.  At a plea hearing with an interpreter present, defendant acknowledged he was pleading guilty to a first-degree crime, received advice from an immigration attorney, and was aware his guilty plea could result in his deportation and a bar on reentry to this country.  The plea forms signed by defendant also state he was pleading guilty to a first-degree crime.

After approximately seven years as a fugitive, defendant was apprehended and brought to court for sentencing.  At his sentencing hearing, the court again noted defendant had pleaded guilty to a first-degree crime, and honored the plea judge's representation by sentencing defendant to the lowest end of the second-degree sentencing range.  See N.J.S.A. 2C:43-6(a)(2).  The JOC stated defendant had pleaded guilty to a first-degree crime.  In his direct appeal, defendant did not argue the JOC misstated the degree of the crime of which he was convicted.  It was only after defendant completed his sentence and was in ICE custody that he alleged he believed he had pleaded guilty to a second-degree crime.  Defendant produced no evidence supporting this claim.

15

Nor did defendant establish he was prejudiced by his alleged misunderstanding of the degree of the crime to which he admitted guilt. Defendant did not produce evidence or a legal citation establishing a plea to a second-degree crime would have insulated him from deportation. Nor are we convinced defendant would have opted to go to trial in the absence of an agreement to permit him to plead guilty to a second-degree crime. The evidence against defendant was overwhelming. After a consensual search, police found him in possession of six hundred bricks of heroin. It is improbable defendant would have forfeited the lenient sentence the State agreed to recommend in exchange for a guilty plea to a first-degree crime to go to trial, where he faced likely conviction, significant sentencing exposure, and, ultimately, deportation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

16
A-1956-24